FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 11, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEANNIE LYNN KILE, Debtor,<br><br>Plaintiff,<br><br>v.<br><br>CODY KENDALL, Creditor,<br><br>Defendant. | NO: 2:17-CV-373-RMP<br><br>ORDER DENYING AND DISMISSING APPEAL |

BEFORE THE COURT is an appeal by Debtor Jeannie Lynn Kile from an order of the United States Bankruptcy Court for the Eastern District of Washington ("Bankruptcy Court"). Ms. Kile appeals from the Bankruptcy Court's October 26, 2017 order: (1) allowing in part and disallowing in part Creditor Cody Kendall's Claim 3-2; (2) denying Debtor Kile's motion to strike witness and exclude witness testimony; (3) and denying Debtor Kile's motion to reopen civil case to present additional evidence. . Having reviewed the parties' briefing and the administrative record, the Court is fully informed.

ORDER DENYING AND DISMISSING APPEAL ~ 1

## BACKGROUND

The following is a chronological summary of the administrative record in this matter relevant to the issues on appeal.

Debtor Kile's father, Lester Kile, owned and farmed an approximately 1,200-acre property in Whitman County, Washington (the "Farm"). Administrative Record, ECF No. 8 ("AR") at 678. Beginning in approximately 2009, Creditor Cody Kendall, Ms. Kile's son, lived on and operated the Farm. AR 610.

Mr. Kile executed a last will and testament on March 10, 2010 ("Will"), in which he placed the Farm into a trust ("Kile Family Farm Trust") and named Ms. Kile as trustee and Mr. Kendall as successor trustee. AR 608.

In the course of Ms. Kile's 2011 dissolution case, in Spokane County, Ms. Kile submitted a declaration from Mr. Kile stating:

> I am essentially requesting that my daughter turn over the <u>farming operation</u> to my grandson, Cody Kendall . . . I believe that Cody Kendall is ready, willing, and able to perform all of the farming responsibilities, and I am willing to renew the lease to Jeannie Kile on the basis that Cody becomes the primary operator of all <u>farming operations</u> involving my farm.

AR 609 (emphasis added).

Mr. Kile died on March 30, 2012. AR 800. In probate, the Spokane County Superior Court ("Superior Court") named Ms. Kile as the personal representative of Mr. Kile's estate and the trustee of the testamentary trusted created by the 2010 Will. *See* AR 517.

ORDER DENYING AND DISMISSING APPEAL ~ 2

The Kile Family Farm Trust provided that:

> The income from the Trust, after payment of expenses, including reasonable reserves for taxes, insurance, equipment, and improvement needs and a reasonable period of operating costs shall be distributed on a periodic basis, at least annually, to Jeannie Kile. If, however, Cody Kendall operates the farm at any time herein, then, he shall be entitled to two-thirds of such income, and Jeannie Kile shall be entitled to one-third.

AR 611.

Ms. Kile filed a declaration in her dissolution action following her father's death stating, in part:

> As administrator of my father's Last Will and Testament, and as trustee of the trust that he has established, it is clear that my father's wishes were to have Cody farm his property. That, in fact, is what is occurring. The transfer of all farming responsibility to Cody has been seamless. As the court can note from previous declarations, Cody was essentially operating the farm prior to this divorce.

AR 610.

At the conclusion of the dissolution case, Ms. Kile's ex-husband received no interest in the Farm. AR 611.

However, following Mr. Kile's death, Ms. Kile did not relinquish two-thirds of the crop proceeds to Mr. Kendall. Rather, in early 2013, Ms. Kile filed an unlawful detainer action in Whitman County Superior Court, which resulted in eviction of Mr. Kendall and his family from the Farm. AR 612.

Mr. Kendall subsequently filed an action under the Trust and Estate Dispute Resolution Act ("TEDRA"), Washington Revised Code ("RCW") ch. 11.96A, in

ORDER DENYING AND DISMISSING APPEAL ~ 3

Superior Court, and the matter proceeded to trial on March 2-5, 2015. On April 10, 2015, the Superior Court found that Ms. Kile had breached her fiduciary duty as personal representative of the estate and as trustee of the Kile Family Farm Trust. AR 613–14. The Superior Court further removed Ms. Kile from her roles as personal representative and trustee and substituted Mr. Kendall as successor personal representative and trustee. AR 619–20.

On May 5, 2015, the Superior Court awarded Mr. Kendall $178,602.40 in attorney's fees and costs. AR 635. On December 7, 2015, the Superior Court heard testimony from a forensic accountant regarding the damages resulting from Ms. Kile's breach of her fiduciary duties to the Kile Family Farm Trust. Based on that testimony and other evidence received at the hearing, and in line with the Superior Court's interpretation of Mr. Kile's Will regarding farm income distribution, the Superior Court entered judgment against Ms. Kile and in favor of Mr. Kendall in the amount of $340,928. AR 639–45.

Ms. Kile appealed the Superior Court's damages award and its rulings construing her late father's will and removing her as personal representative and trustee. AR 53, 733.

While the state court appeal was pending, Ms. Kile filed a petition for Chapter 11 bankruptcy on March 3, 2016. AR 94. The "Amended Notice of Chapter 11 Bankruptcy Case" ("Notice"), which lists Mr. Kendall as a recipient of the Notice recites a July 7, 2016 deadline for filing a creditor's claim against the Chapter 11

ORDER DENYING AND DISMISSING APPEAL ~ 4

bankruptcy estate. AR 99–100. The Notice also informed the recipient of an "automatic stay against most collection activities" against debtors upon filing of the Chapter 11 bankruptcy case. AR 99.

On June 9, 2016, the Superior Court issued an order that Ms. Kile and Mr. Kendall would each bear the cost of their attorney's fees and costs related to the December 2015 damages hearing. AR 855–56.

Mr. Kendall filed a proof of claim in the Bankruptcy Court on July 1, 2016, "Claim 3-1," for $345,523.52, the amount of the Superior Court's January 22, 2016 judgment, plus interest between January 22, 2016, and the effective date of the bankruptcy stay, March 3, 2016. AR 593–96.

The Washington Court of Appeals, Division Three, affirmed the Superior Court's rulings on March 7, 2017. *In re Estate of Kile*, Nos. 33613-1-III, 34048-1-III, 2017 Wash. App. LEXIS 556 (Ct. App. Mar. 7, 2017).

On May 22, 2017, Mr. Kendall filed an "amended" proof of claim in the Bankruptcy Court, "Claim 3-2," for $629,973.52 in judgment and post judgment damages. AR 648–51. Mr. Kendall sought, in addition to the $345,523.52 that he had claimed in Claim 3-1, $44,750 for an itemized list of "Fixtures removed from family trust farm by debtor[,]" $44,700 for "Costs of Financing Required to Farm to Date[,]" and $195,000 in post-judgment attorney's fees. AR 651.

Also, on approximately May 22, 2017, Ms. Kile petitioned the Washington State Supreme Court for review of the TEDRA judgment. *See* ECF No. 9 at 13. On

ORDER DENYING AND DISMISSING APPEAL ~ 5

October 4, 2017, the Washington State Supreme Court denied Ms. Kile's petition for review and granted a request by Mr. Kendall for reasonable attorney's fees and costs. AR 60; *see also In re Estate of Kile*, 2017 Wash. LEXIS 954, 189 Wn.2d 2012 (Wash. 2017).

On October 26, 2017, the Bankruptcy Court issued an order "Allowing in Part and Disallowing in Part Claim 3-2" ("October 26 Order") finding that Mr. Kendall suffered damages in the amount of $41,300 "as a result of Jeannie Kile's removal of trust farm property[.]" AR 56. The Bankruptcy Court allowed Claim 3-2 in the amount of $41,300, less "the $2,000 that Cody Kendall was sanctioned for his violation of the automatic stay" and disallowed Claim 3-2 in remaining part. AR 60. Specifically, the Bankruptcy Court disallowed Mr. Kendall's claim for $44,700 for the costs of financing equipment as "duplicative of the amounts the court has allowed for damages he suffered as a result of the improper removal of trust property by Jeannie Kile." AR 59. In addition, the Bankruptcy Court did not find any basis to award Mr. Kendall his requested attorney's fees. AR 59.

In this appeal, Ms. Kile takes issue only with the $41,300 less $2,000 in sanctions that the Bankruptcy Court allowed in part for Mr. Kendall's Claim 3-2.

**STANDARD OF REVIEW**

This Court reviews the Bankruptcy Court's conclusions of law de novo and its factual findings for clear error. *Blausey v. United States Trustee*, 552 F.3d 1124, 1132 (9th Cir. 2009).

## DISCUSSION

*1.     Subject matter jurisdiction over Creditor Kendall's Claim 3-2*

Debtor Kile argues that the Bankruptcy Court lacked subject matter jurisdiction to adjudicate ownership rights and distribution of personal property that either belonged to Debtor Kile, the Probate Estate of Lester Kile, or the Kile Farms Trust. ECF No. 11 at 8. Ms. Kile asserts that the trust exception to the Bankruptcy Court's subject matter jurisdiction applies and makes it improper for the Bankruptcy Court to interpret Lester Kile's will, determine ownership and distribution of personal property that was subject to probate, or award damages of $41,300 to Mr. Kendall individually for Ms. Kile's conversion of Kile Family Farm Trust Property. ECF Nos. 7 at 16; 11 at 11. Ms. Kile argues that only the Spokane Superior Court overseeing the probate matter had jurisdiction to administer the assets of the Kile Family Farm Trust. ECF No. 7 at 6. Ms. Kile alleges that Mr. Kendall filed both his Claim 3-1 and Amended Claim 3-2 in his individual capacity; he never asserted that he was acting in his own name for the benefit of the Kile Farms Trust or its three beneficiaries. ECF No. 7 at 21.

Mr. Kendall responds that the scope of the probate exception does not reach the actions of the Bankruptcy Court. Rather, Mr. Kendall argues that the Bankruptcy Court had jurisdiction to determine whether to allow or disallow Mr. Kendall's Amended Claimed 3-2 as part of the "core proceedings arising under title 11." ECF No. 9 at 22 (citing 28 U.S.C. § 157).

Under 28 U.S.C. § 157, a bankruptcy judge is authorized to hear and determine all "core proceedings" arising under title 11 or arising in a case under title 11 and to enter appropriate orders and judgments in those proceedings. 28 U.S.C. § 157(b)(1). Although the statute does not define "core proceedings," section (b)(2) provides a non-exclusive list of examples, including "matters concerning the administration of the estate," "orders to turn over property of the estate," and "other proceedings that affect the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2).

In addition, the Supreme Court has emphasized that an individual who files a claim against the bankruptcy estate "triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (per curiam) (quoting *Granfinanciera v. Nordberg*, 492 U.S. 33, 58–59 (1989)). Creditors who file claims against the bankruptcy estate bring themselves within the equitable jurisdiction of the bankruptcy court to restructure the debtor-creditor relationship.

The probate exception to bankruptcy court jurisdiction "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006) (clarifying the probate exception in reversing the Ninth Circuit's overly broad interpretation of it). The exception does not, however "bar

federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id*. at 312.

The Supreme Court repeatedly has emphasized the narrow application of the probate exception. *See id.* at 299–300, 305, 310–12; *Markham v. Allen*, 326 U.S. 490, 494 (1946) (holding that federal court jurisdiction had been properly invoked because the federal court did not "disturb or affect the possession of property in the custody of a state court" and acted within the jurisdiction of federal courts of equity "to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' . . .") (quoting *Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 43 (1909)). After the Supreme Court's restriction of the probate exception in *Marshall*, 547 U.S. 293, the Ninth Circuit, along with other circuits, reformulated the test for the application of the probate exception: "'[U]nless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court, the probate exception does not apply.'" *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1252 (9th Cir. 2017) (quoting *Three Keys Ltd. V. SR Util. Holding Co.*, 540 F.3d 220, 227 (3d 2008)). The Ninth Circuit further cited approvingly the following formulation by the Second Circuit: "'Following *Marshall*, we must now hold that so long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state court, if jurisdiction otherwise

ORDER DENYING AND DISMISSING APPEAL ~ 9

lies, then the federal court may, *indeed must*, exercise it.'" *Id.* (quoting *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106–07 (2d. Cir. 2007)).

Ms. Kile does not demonstrate that any of the circumstances falling within the scope of the probate exception are present here. The Will had previously been probated, and the TEDRA action further construed the Will in removing Ms. Kile as personal representative and trustee and substituting Mr. Kendall as successor personal representative and trustee. The TEDRA action had become final when the Washington State Supreme Court denied Ms. Kile's petition for review. There is no indication that any property remained under the control of the state court.

Finally, the Bankruptcy Court did not construe the Will to determine Mr. Kile's intent or for any other purpose: the Bankruptcy Court relied on the Superior Court's Findings of Fact and Conclusions of Law construing the Will, which had been upheld on appeal by the time of the Bankruptcy Court's determination of Claim 3-2. *See* AR 49−60. Rather, the Bankruptcy Court was determining the scope of property falling within the bankruptcy estate and the rights of a creditor to that property, essential aspects of administering the estate. Therefore, the Bankruptcy Court was conducting a "core proceeding" that did not fall within the narrow probate exception to the Bankruptcy Court's equity jurisdiction. *See* 28 U.S.C. § 157(b)(2); *Goncalves*, 865 F.3d at 1252.

*2. Creditor Kendall's standing to pursue claims against the bankruptcy estate for monetary damages arising from conversion of personal property owned by the Kile Family Farm Trust*

Ms. Kile argues that Mr. Kendall lacked standing to pursue damages for the value of equipment and fixtures that Ms. Kile removed from the Farm. Ms. Kile argues that the equipment was the property of the Kile Family Farm Trust, so Mr. Kendall was not the real party in interest. Ms. Kile posits that only the Kile Family Farm Trust, as a separate legal entity from Mr. Kendall individually, had standing to file a proof of claim.

Mr. Kendall argues that he had standing to pursue Claim 3-2 in his own name for a number of reasons. First, due to Ms. Kile's removal of property from the Farm, Mr. Kendall "was required to expend personal funds, which funds he was required to borrow personally, in order to obtain the equipment and fixtures necessary to operate the farm." ECF No. 9 at 26. Second, Mr. Kendall argues that he was permitted to pursue the claim in his own name both by the Washington Code section cited by Ms. Kile, RCW 11.48.010, and by Fed. R. Civ. P. Rule 17(a). Mr. Kendall asserts that since the Superior Court order in May 2015, he has been both the beneficiary of the Kile Family Farm Trust and its trustee, as well as the personal representative of Mr. Kile's estate. *See id.* at 27.

The Court agrees that Mr. Kendall has standing to pursue a debt owed by Ms. Kile to him personally and to the Kile Family Farm Trust. To be authorized to file a

ORDER DENYING AND DISMISSING APPEAL ~ 11

proof of claim, a claimant must be a "creditor or the creditor's authorized agent." Fed. R. Bank. P. 3001(b). The Bankruptcy Code defines "creditor" as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A "claim" includes a "right to payment[,]" or a "right to an equitable remedy for breach of performance" "whether or not such right[s are] reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5).

Rule 17, Fed. R. Civ. P., provides that "[a]n action must be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a)(1). Rule 17 further provides that administrators and trustees, among others, "may sue in their own names without joining the person for whose benefit the action is brought." *Id.* In the bankruptcy context, the Ninth Circuit Bankruptcy Appellate Panel has found that a party in interest includes a person who has a direct financial or legal stake in the outcome of the case. *Brown v. Sobczak (In re Sobczak)*, 369 B.R. 512, 517−18 (B.A.P. 9th Cir. 2007).

In short, "[the] Bankruptcy Code and Fed. R. Civ. P. 17 each have liberal standing provisions, designed to allow a party to appear as long as it has a direct stake in the litigation under the particular circumstances." *In re Conde-Dedonato*, 391 B.R. 247, 250 (Bank. E.D.N.Y. 2008) (quoting *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002)).

In Claim 3-2, Mr. Kendall pursued recovery of $44,750 for an itemized list of fixtures removed from the Farm by Ms. Kile and $44,700 for the costs incurred by Mr. Kendall personally in securing equipment to be able to farm up until the date he filed the proof of claim. AR 651. The Bankruptcy allowed only "$41,300, less the $2,000 that Cody Kendall was sanctioned for his violation of the automatic stay" for the removal of Farm property and disallowed as duplicative Mr. Kendall's claim for the costs he incurred financing equipment that allowed him to farm in the absence of the property that Ms. Kile removed. AR 56−57, 60.

The record from the Bankruptcy Court and the October 26 Order both demonstrate that Mr. Kendall has a sufficiently tangible interest in the bankruptcy estate to bring a claim in his own name, both on a personal basis due to the damages that Mr. Kendall substantiated before the Bankruptcy Court that were disallowed as duplicative, and as administrator of his grandfather's estate and trustee of the Kile Family Farm Trust under Fed. R. Civ. P. Rule 17. There is no dispute that Mr. Kendall discovered that some of the Farm's equipment was missing after he was substituted as administrator and trustee in April 2015, and Ms. Kile does not dispute the Bankruptcy Court's finding that she was not the rightful owner of the property that she removed from the Farm, listed in the Bankruptcy Court's Finding 37. AR 56−58. Therefore, the Court concludes from the record that Mr. Kendall was an appropriate claimant for the property at issue.

3.  *Prima facie evidence of validity and amount of Claim 3-2 and sufficiency of the evidence supporting the claims*

Ms. Kile argues that Mr. Kendall did not satisfy the requirements of Fed. R. Bankr. P. Rule 3001(f) to warrant treating his proof of claim as prima facie evidence of validity. ECF No. 7 at 14. Mr. Kendall responds that the Bankruptcy Court consistently placed the ultimate burden of persuasion on Mr. Kendall and, even if Mr. Kendall failed to meet the requirements of Fed. R. Bankr. P. Rule 3001(f), he ultimately proved Claim 3-2 by a preponderance of the evidence. ECF No. 9 at 24.

If a creditor timely files a proof of claim, the claim is deemed allowed unless a party objects. 11 U.S.C. § 502(a). In addition, Rule 3001(f), Fed. R. Bankr. P., provides that a correctly executed and filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Once the prima facie validity is rebutted by the debtor, the claimant must prove his claim by a preponderance of the evidence. *See, e.g., Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000); *In re Tracey,* 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008). "The ultimate burden of persuasion remains at all times upon the claimant." *Lundell*, 223 F.3d at 1040.

The Bankruptcy Court's October 26 Order reflects that, whatever deficiency there may have been in Mr. Kendall's Proof of Claim 3-2, the Court found that a preponderance of the evidence supported the amount of the claim allowed. Therefore, the Court agrees with Mr. Kendall that this issue does not present a basis

ORDER DENYING AND DISMISSING APPEAL ~ 14

to find that the Bankruptcy Court erred.  At this stage, it is irrelevant whether the prima facie validity standard was met because Claimant proved the approved portion of Claim 3-2 by the requisite standard of proof.

*4.     Denial of attorney's fees for Debtor's motions related to Claim 3-2 and Claimant's assertion of frivolous appeal*

Ms. Kile argues that the Bankruptcy Court erroneously denied Ms. Kile's requests for fees after granting Ms. Kile's discovery motions because such awards of fees are mandatory under Fed. R. Civ. P. Rule 37.  ECF No. 11 at 23.  However, a fee award is not appropriate where the opposing party's nondisclosure was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a).  Numerous findings by the Bankruptcy Court in the October 26 Order address the issue of whether an award of expenses would have been just under the circumstances, including that Mr. Kendall's "failure to attach full and complete documentary evidence to support each aspect of the items presented in Claim 3-2 was harmless."  AR 58 (citing Fed. R. Bankr. P. 3001(c)(2)(D)(i), which allows a claimant to remedy an omission of necessary information in support of his proof of claim if "the failure was substantially justified or is harmless").  The Court finds that the Bankruptcy Court did not exceed or abuse its discretion in denying Ms. Kile's request for an award of fees in moving to compel.

Lastly, Mr. Kendall asks the Court to sanction Ms. Kile for a frivolous appeal. ECF No. 9 at 32.  Rule 8020, Fed. R. Bankr. P., authorizes "just damages and single

ORDER DENYING AND DISMISSING APPEAL ~ 15

1 or double costs" to the appellee upon the district court's determination that an appeal
2 is frivolous. An appeal is frivolous if "the results are obvious, or the arguments of
3 error are wholly without merit." *George v. City of Morro Bay (In re George)*, 322
4 F.3d 586, 588 (9th Cir. 2003). Although the Court concluded that each of Ms. Kile's
5 arguments of error lacked merit, the Court does not find that the results should have
6 been obvious at the time Debtor Kile appealed. Therefore, the Court does not find it
7 appropriate to award costs to Creditor Kendall based on a frivolous appeal.

For the foregoing reasons, the Court **DENIES** and **DISMISSES** Debtor Jennie Kile's appeal. The Clerk of Court is directed to send copies of this Order to counsel and the Bankruptcy Court and **close the file** in this case.

**DATED** December 11, 2018.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge